**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |
|---|---|
| **KASEY E. LANGAN,** ) | |
| ) | **CIVIL ACTION NO.:** |
| **Plaintiff** ) | |
| ) | _____ |
| ) | |
| **vs.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **CHRISTIANA COMMUNITY** ) | |
| **AMBULANCE ASSOCIATION, INC.,** ) | |
| ) | |
| **Defendant** ) | ELECTRONICALLY FILED |
| ) | |

_____

## <u>COMPLAINT</u>

Plaintiff, KASEY E. LANGAN, a resident of Lancaster County, Pennsylvania, by and through her attorneys, brings this civil action for damages against the above named Defendant, CHRISTIANA COMMUNITY AMBULANCE ASSOCIATION, INC., demands a trial by jury, and complains and alleges as follows:

## <u>JURISDICTION AND VENUE</u>

1.      Jurisdiction of the claims set forth in this Complaint is proper in this judicial district pursuant to the Americans With Disabilities Act, as amended, 42 U.S.C. §12101 *et seq.* (the "ADA"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e *et seq.* (the "PDA"), and 28 U.S.C. §§1331 and 1343.

2.      This court has supplemental jurisdiction of Plaintiff's state claims under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 et seq. (the "PHRA"), pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## THE PARTIES

4.      Plaintiff, Kasey E. Langan ("Ms. Langan"), is an adult individual residing at 344 Deerfield Drive, Mount Joy, Lancaster County, Pennsylvania.

5.      At all times relevant and material hereto, Ms. Langan was disabled as defined by the ADA and the PDA.

6.      Defendant, Christiana Community Ambulance Association, Inc. ("CCAA"), is a Pennsylvania corporation with a primary address of 55 Pine Creek Drive, Gap, Lancaster County, Pennsylvania.

7.      At all times relevant and material hereto, CCAA operated a regional ambulance / emergency service, and was an employer as defined by the ADA, the PDA, and the PHRA. Specifically, CCAA had fifteen or more employees for each working day in each of twenty or more calendar weeks in 2018 and/or 2019.

## ADMINISTRATIVE PROCEEDINGS

8.      On or about April 16, 2019, Ms. Langan filed a Complaint with the Equal Employment Opportunity Commission, which was docketed as Case No. 530-2019-03208, which was dual filed with the Pennsylvania Human Relations Commission.

9.      Ms. Langan was advised of her right to sue in federal court, which notice was dated March 11, 2020.

10.     All necessary and appropriate administrative prerequisites to this action have occurred.

**STATEMENT OF FACTS**

11.     In or about May 2012, Ms. Langan was hired by CCAA as an Emergency Medical Technician ("EMT").

12.     Ms. Langan always performed her work in at least a satisfactory manner.

13.     Ms. Langan found out that she was pregnant on June 24, 2018, and immediately notified her supervisor and CCAA's chief, Donald Billett, on her following shift.

14.     In or about the end of July 2018, Ms. Langan had her first ultrasound, at which time it was noticed on the ultrasound that something was not right, and Ms. Langan's healthcare provider wanted to perform more ultrasounds over the following weeks to confirm.

15.     In or about late July or early August 2018, Mr. Billett advised Ms. Langan that that he would be resigning his position with CCAA, and that he had mentioned Ms. Langan's name to the CCAA board as someone who would be capable of taking his place.

16.     On or about August 7, 2018, Ms. Langan received a Facebook message from Dottie Ely, who was the wife of CCAA Board President Rick Ely and is often involved in CCAA fundraisers.  Ms. Ely encouraged Ms. Langan to apply for Mr. Billett's position, advising her to talk to Mr. Ely, and stating that Ms. Langan would be an "awesome one for the job."

17.     On or about August 9, 2018, Ms. Langan had a meeting with Mr. Ely, who also encouraged Ms. Langan to submit her letter of intent and resume before the next board meeting; that night Ms. Langan sent her letter of intent to Mr. Ely.

18.     Following Ms. Langan's conversation with Mr. Ely, she and several other employees advocated to have Mr. Billett's position split into administrative and operational positions, as recommended by the National Incident Management System.  A board member later confirmed to Ms. Langan that the two positions were approved by the CCAA board.

19.    Sadly, on or about August 17, 2018, Ms. Langan received a fatal diagnosis for her unborn child.

20.    Subsequently, on or about August 18, 2018, Ms. Langan had a miscarriage scare and was driven to Women and Babies Hospital ("WBH") in Lancaster.  Although her unborn child still had a heartbeat, the nurse midwife at WBH diagnosed Ms. Langan with an imminent miscarriage.  Ms. Langan was instructed to take two weeks off, and she was placed on a 30-pound lifting restriction for the remainder of her pregnancy.

21.    On or about August 21, 2018, Ms. Langan met with Mr. Billett and Mr. Ely at Ms. Langan's request to talk about the diagnosis she had received.  At all times during Ms. Langan's pregnancy, she informed CCAA promptly of all developments.

22.    On or about August 23, 2018, Ms. Langan sent in her resume for the CCAA administrative position.

23.    On or about August 24, 2018, CCAA announced via email that Ashley Wright, who was not pregnant and did not have any restrictions, had been selected for the administrative position.

24.    Ms. Wright was significantly less qualified for the administrative position than Ms. Langan.  At the time of her promotion, Ms. Wright had less than two years' experience as an EMT overall, and less time with CCAA than Ms. Langan.  Mr. Billett's resignation had left Ms. Langan with the most seniority at CCAA by several years.  Ms. Langan also had the highest level of certification with the company.  At the time of Ms. Wright's promotion, Ms. Langan had spent nine years in emergency medical services (six as an EMT and three as a Paramedic), and had worked at a variety of different companies and done both rural and city EMS.  Ms. Langan was the most qualified applicant for the position, yet she was not even interviewed.

4

25. After Ms. Wright's promotion was announced, Ms. Langan applied for the deputy position, but was denied this as well.

26. On or about September 4, 2018, Ms. Langan met with Mr. Ely and Ms. Wright at the station where Mr. Ely offered light duty to Ms. Langan, consistent with her restrictions. During this meeting Mr. Ely told Ms. Langan to be sure to "get your work done slowly to stretch it out," and stated that he did not expect Ms. Langan to work the whole time she was on the clock because "no other employee does, so expecting that from you would be unreasonable." Ms. Langan was never requested to provide a doctor's note regarding her restrictions.

27. While performing light duty work, Ms. Langan completed all requested tasks, and took initiative to complete some tasks which were not requested. Ms. Wright advised Ms. Langan that she was extremely happy with Ms. Langan's work, and Ms. Wright never made a complaint about Ms. Langan's work ethic.

28. On or about September 27, 2018, Ms. Langan had a conversation prior to a board meeting with two employees of CCAA, Justin Shultz and William Dill. Both employees were attempting to convince Ms. Langan to quit, go on disability, and obtain state health insurance as, in their words, Ms. Langan was "screwing over the company" by remaining employed at CCAA.

29. On or about October 26, 2018, Ms. Langan volunteered to accompany the all male crew who was preparing to respond to a 911 call to the Birthing Center in Bart Township. This was a normal procedure due to the nature of the incidents, and Ms. Langan had previously been medically cleared to do so. However, Ms. Langan's offer was rejected.

30. Shortly after the crew left to respond to the 911 call, on or about October 26, 2018, Herb Hogg arrived at the station. Mr. Hogg advised Ms. Langan that the CCAA Board was "sorry" for her "situation," but that she was "too much of a liability" to be around the station. Mr. Hogg

5

told Ms. Langan that he understood she had been driving the ambulance, and Ms. Langan confirmed that she had been and was medically cleared to do so.  Mr. Hogg responded that if Ms. Langan were to get injured Workers' Compensation would not cover her injury and that she was a liability to CCAA.  Mr. Hogg then told Ms. Langan that she would need to leave work and apply for short term disability.

31.    Following her conversation with Mr. Hogg, Ms. Langan clocked out and went home.

32.    CCAA's determination that Ms. Langan was "too much of a liability" to perform within the restrictions imposed by her medical provider was made without any medical justification, and despite the fact that there were still many duties to which Ms. Langan could attend without lifting more than 30 pounds.  Furthermore, Ms. Langan was aware that CCAA made light duty accommodations for a non-pregnant employee who had suffered a back injury.

33.    Because of the CCAA's unilateral and unsupported decision to withdraw Ms. Langan's accommodations, Ms. Langan was out of work beginning on October 26, 2018.

34.    Additionally, CCAA discriminated against Ms. Langan because of her pregnancy by not offering her the opportunities for promotion created by Mr. Billett's resignation, which were instead given to other less qualified, non-pregnant employees following Ms. Langan's announcement of her pregnancy.  Had Ms. Langan, who was the most qualified individual, been promoted, she would have been able to work through her pregnancy.

35.    CCAA discriminated against Plaintiff based on her pregnancy in violation of Plaintiff's rights under the ADA, the PDA, and the PHRA.

## COUNT I
### Discrimination and Failure to Provide Reasonable Accommodation
### Pursuant to the Americans With Disabilities Act

36.     All prior paragraphs are incorporated herein as if set forth fully below.

37.     Ms. Langan is within the protective class of individuals as designated by the ADA.

38.     Ms. Langan is a qualified individual with a disability.

39.     Ms. Langan's disability substantially limits her ability to perform major life activities, including her ability to lift.

40.     Ms. Langan was able to perform the essential functions of her job with a reasonable accommodation.

41.     CCAA violated the ADA and committed illegal discrimination by failing to afford Ms. Langan a reasonable accommodation and refusing to allow Ms. Langan to return to work because of her disability, and by failing to promote Ms. Langan into a position for which she was the most qualified applicant.

42.     CCAA further violated the ADA by failing to engage in a flexible interactive process with Ms. Langan to determine if an alternate accommodation was appropriate.

43.     The illegal discrimination is based in whole or in part upon Ms. Langan's disability.

44.     As a direct and proximate result of the conduct of CCAA in violating the ADA in discriminating against Ms. Langan on the basis of her disability, Ms. Langan has been permanently and irreparably harmed and damaged and has and will continue to lose benefits of employment such as lost earnings, lost employment benefits, and non-economic damages in the form of embarrassment, humiliation, and anxiety.

WHEREFORE, Ms. Langan demands that the Court declare the conduct engaged in by CCAA to be in violation of Ms. Langan's rights under the Americans With Disabilities Act and

award all compensatory damages, damages for failure to provide reasonable accommodation, lost wages (and raises) and benefits, front pay and back pay, lost future earning capacity, liquidated damages for intentional, willful, malicious, reckless, outrageous conduct, damages for emotional distress, punitive damages, reasonable attorneys' fees and costs incurred herein, and any pre and/or post judgment interest on all money awarded in damages for delay.

## COUNT II
### Discrimination Pursuant to the Pregnancy Discrimination Act

45.   All prior paragraphs are incorporated herein as if set forth fully below.

46.   Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based upon an individual employee's sex.  42 U.S.C. §2000e-2(a).

47.   The Pregnancy Discrimination Act of 1978, amended Title VII to state that:

> The terms "because of sex" or "on the basis of sex" include but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in the ability or inability to work….

48.   At all times relevant and material hereto, Ms. Langan was within the protective class of individuals as intended by the PDA.

49.   Ms. Langan was wrongfully denied promotion opportunities, which were afforded to less qualified, non-pregnant individuals after Ms. Langan's advised CCAA of her pregnancy.

50.   Further, Ms. Langan was able to perform the essential functions of her position with CCAA with a reasonable accommodation.

51.   Ms. Langan was first denied a promotion, and later denied reasonable accommodations solely as a result of her pregnancy.

52.     CCAA violated the PDA by failing to treat Ms. Langan the same as it did other employees not effected by pregnancy, but with similar abilities or inability to work.

53.     As a direct and proximate result of the conduct of CCAA in violating the PDA in discriminating against Ms. Langan on the basis of her pregnancy, Ms. Langan has been permanently and irreparably harmed and damaged and has and will continue to lose benefits of employment such as lost earnings, lost employment benefits, and non-economic damages in the form of embarrassment, humiliation, and anxiety.

WHEREFORE, Ms. Langan demands that the Court declare the conduct engaged in by CCAA to be in violation of Ms. Langan's rights under the Pregnancy Discrimination Act and award all compensatory damages, damages for failure to provide reasonable accommodation, lost wages (and raises) and benefits, front pay and back pay, lost future earning capacity, liquidated damages for intentional, willful, malicious, reckless, outrageous conduct, damages for emotional distress, punitive damages, reasonable attorneys' fees and costs incurred herein, and any pre and/or post judgment interest on all money awarded in damages for delay.

## <u>COUNT III</u>
### PHRA Violations

54.     All prior paragraphs are incorporated herein as if set forth fully below.

55.     This is an action arising under the provisions of the PHRA and this Court has, and should exercise, pendant jurisdiction over the same because the cause of action complained of in this Count III arises out of the same facts, events and circumstances as Counts I and II, and therefore judicial economy and fairness to the party's dictates that this Count be brought in the same Complaint.

56.     By discriminating against and failing to accommodate Ms. Langan on the basis of her disability and pregnancy, CCAA violated Ms. Langan's state rights under the PHRA, which

9

prohibits discrimination and harassment based upon disability and/or pregnancy with respect to the continuation and tenure of employment.

57.     As more fully set forth in Counts I and II, Ms. Langan has suffered directly and solely as a result of CCAA's action, great pecuniary loss, damage, and harm and will continue to suffer the same for the indefinite future.

WHEREFORE, Ms. Langan respectfully prays that judgment be entered in her favor and against CCAA for all of the relief sought in Counts I and II, *supra*, and such other and further relief provided by the PHRA, together with an award of attorneys' fees and costs of suit.

## **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

Weisberg Cummings, P.C.

April 22, 2020      /s/ Larry A. Weisberg
Date                       Larry A. Weisberg (PA Bar #83410)
                              lweisberg@weisbergcummings.com

                              /s/ Derrek W. Cummings
                              Derrek W. Cummings (PA Bar # 83286)
                              dcummings@weisbergcummings.com

                              /s/ Steve T. Mahan
                              Steve T. Mahan (PA Bar # 313550)
                              smahan@weisbergcummings.com
                              2704 Commerce Drive, Suite B
                              Harrisburg, PA 17110
                              (717) 238-5707
                              (717) 233-8133 (FAX)

                              *Attorneys for Plaintiff*